**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1401

AMY CROCKETT, in her individual capacity and as Administrator of the Estate of
Ken Crockett, Deceased,

Plaintiff - Appellee,

v.

DUKE ASHLEY, in his individual capacity,

Defendant - Appellant,

and

CHARLES S. BLACKWOOD, in his official capacity as Orange County Sheriff;
TYLER CHELENZA, in his individual capacity; TRAVELERS CASUALTY AND
SURETY CO. OF AMERICA, as surety,

Defendants.

Appeal from the United States District Court for the Middle District of North Carolina, at
Greensboro. Loretta C. Biggs, District Judge. (1:18-cv-00809-LCB-JLW)

Submitted: August 30, 2021                     Decided: November 30, 2021

Before AGEE and RICHARDSON, Circuit Judges, and KEENAN, Senior Circuit Judge.

Dismissed by unpublished per curiam opinion.

Christopher J. Geis, James A. Dean, WOMBLE BOND DICKINSON (US) LLP, Winston-Salem, North Carolina, for Appellant. James E. Hairston, Jr., HAIRSTON LANE BRANNON, PA, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Around 11:00 p.m. on February 18, 2017, Deputy Duke Ashley of the Orange County, North Carolina, Sheriff's Department fatally shot Ken Crockett ("Crockett") on Crockett's front porch. Crockett's wife, Amy Crockett ("Plaintiff"), in her individual capacity and as administrator of Crockett's estate, sued Ashley and others asserting a claim of excessive force under 42 U.S.C. § 1983 and various state law claims. Ashley moved for summary judgment on grounds of qualified immunity and public official immunity. The district court denied the motion after identifying a disputed issues of fact. Ashley has taken an interlocutory appeal. Because the district court's decision turns on genuine issues of material fact, we dismiss the appeal for lack of jurisdiction.

Ashley was on duty in Orange County when he heard a be on the lookout ("BOLO") alert broadcasted for Crockett as a wanted, armed, and dangerous suspect who had allegedly invaded a home in Mebane County, North Carolina. Crockett lived in Orange County, and the Mebane County BOLO instructed Orange County police to stop and detain Crockett if found. Mebane County further advised deputies to go to Crockett's address in an attempt to locate the suspect. Sergeant Ryan Jones arranged for officers to meet outside of Crockett's residence. Ashley and another responding officer, Tyler Chelenza, approached the front door to make contact, while other officers covered the side entrance. Chelenza shut off power to a light facing the home, and the inside of the house was dark. After officers conducted this stealth approach, Ashley knocked on the door, Crockett opened the door with a firearm in his hand, and Ashley shot Crockett four times. The facts after Ashley stationed himself on the porch are disputed.

3

According to Ashley, after he knocked, Crockett flung the door open with great force and immediately raised his gun toward Ashley, (J.A. 122-23), leaving Ashley with no time to warn Crockett before Ashley fired his AR-15 three times. (J.A. 121). Ashley stated that he saw Crockett's revolver pointed at his face. (J.A. 121). According to Chelenza, who had stationed himself to the left of the porch, facing the house, he heard a door crack open and heard Ashley say, "Come on out, Bud," and then he heard the door open forcefully. (J.A. 174).[1] Chelenza stated that Crockett almost completely exited from the doorway when Ashley stated in rapid succession, "Show me your hands, show me your hands." (J.A. 181). Chelenza heard Ashley yell "gun" (J.A. 182), and Chelenza saw Crockett pointing a gun at Ashley, (J.A. 174), and raising it towards Ashley's head, (J.A. 181-82). Chelenza fired one round toward Crockett. (J.A. 174).

Plaintiff's deposition testimony presented a different account. Crockett took a step outside and turned his body to his left an estimated 45 degrees; Plaintiff did not know whether Crockett saw what was out there "because the shots came so quickly" (J.A. 284-85), and all she could see was darkness, (J.A. 285). According to Plaintiff, Crockett never raised the gun because she saw it while he stepped out and it was angled behind him, down to his right side. (J.A. 282). Crockett was shot about half a second to a second after opening the door, which she thought was the result of someone trying to break into the home. (J.A. 287-88). Crockett died on scene.

---

[1] "J.A" refers to the joint appendix filed by the parties in this appeal.

4

The district court denied Ashley's motion for summary judgment on the basis of qualified immunity and public officer immunity.[2] The court found that there were genuine issues of material fact as to whether Ashley's use of force was justified and, accordingly, denied Ashley qualified immunity. This appeal followed.

This court may exercise jurisdiction only over final decisions, 28 U.S.C. § 1291, and certain interlocutory and collateral orders, 28 U.S.C. § 1292; Fed. R. Civ. P. 54(b); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). "[A] district court's order denying summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine." *Yates v. Terry*, 817 F.3d 877, 882 (4th Cir. 2016). However, this court has jurisdiction over an appeal from the denial of qualified immunity at the summary judgment stage only if that appeal "turns on an issue of law." *Id.* (emphasis and internal quotation marks omitted).

If, upon examining the district court's order, we determine that "summary judgment was denied as to a particular claim solely because there is a genuine issue of material fact, that claim is not immediately appealable and we lack jurisdiction to consider it." *Iko v. Shreve*, 535 F.3d 225, 235 (4th Cir. 2008). We look only to the undisputed facts and "may not credit [Ashley's] evidence, weigh the evidence, or resolve factual disputes in [Ashley's] favor." *Hensley v. Price*, 876 F.3d 573, 579 (4th Cir. 2017).

---

[2] The district court granted Defendants' motion for summary judgment as to all claims except the individual capacity claims against Ashley under federal and state law and an additional surety bond claim against Defendant Sheriff Charles S. Blackwood in his official capacity under state law.

After careful consideration, the district court determined that factual disputes existed as to "(1) the speed and force with which . . . Crockett approached his front door; (2) where Crockett was on the porch when he was shot; (3) whether his gun was raised; and (4) how the officers behaved in the seconds leading up to his shooting" and found that these questions were material to whether Ashley's use of force was justified. (J.A. 708 (footnote omitted)). *Cf. Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013). To the extent that Ashley relies on the bullets, casings, their location, testimony from the medical examiner, and gunshot wounds to paint a picture of how and why Crockett posed a threat, we may not weigh a genuine issue of fact in Ashley's favor. Given that Ashley's appeal does not turn on an issue of law, we must dismiss Ashley's appeal for lack of jurisdiction.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*DISMISSED*